IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WHITNEY HARRIS-WILLIAMS, ADMINISTRATRIX OF THE ESTATE OF ULYSSES KAE WILLIAM, III, DECEASED,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FREIGHT OUTLET STORES, LLC f/k/a SEARS OUTLET STORES, LLC, & SEARS OUTLET STORES, LLC,<br><br>Defendants. | Civil Action No. 22-76-SRF |

Michael P. Minuti, McCann Dillon Jaffe & Lamb, LLC, Wilmington, DE; Gardenia L. Brooman, Verlin & Brooman, LLC, Bala Cynwyd, PA.

  Attorneys for Plaintiff.

William R. Adams, Dickie, McCamey & Chilcote, Wilmington, DE; Sean T. Stadelman, Stephen A. Sheinen, Goldberg Segalla LLP, Philadelphia, PA.

  Attorneys for Defendants.

**MEMORANDUM OPINION**

October 11, 2023
Wilmington, Delaware

**FALLON, U.S. MAGISTRATE JUDGE:**

Presently before the court in this premises liability action is a motion for summary judgment under Federal Rule of Civil Procedure 56, which was filed by defendants American Freight Outlet Stores, LLC f/k/a Sears Outlet Stores, and Sears Outlet Stores, LLC (collectively, "Defendants"). (D.I. 51)[1] For the following reasons, Defendants' motion for summary judgment is DENIED.

## I. BACKGROUND

Whitney Harris-Williams ("Plaintiff"), Administratrix of the Estate of Ulysses Kae Williams III, ("Decedent"), filed this action on September 21, 2021 in the Philadelphia County Court of Common Pleas, and Defendant subsequently removed the case to the Eastern District of Pennsylvania on diversity grounds. (D.I. 1) The parties then stipulated to transfer the case to the District of Delaware, and the case was transferred on December 20, 2021. (D.I. 12; D.I. 13) On March 31, 2022, the parties consented to the jurisdiction of the undersigned judicial officer for all purposes including trial, the entry of final judgment, and all post-trial proceedings. (D.I. 24) Fact discovery closed on April 19, 2023, and a five-day jury trial is set to begin on April 22, 2024. (D.I. 43)

Plaintiff's complaint arises from an incident that occurred on June 26, 2019, when Decedent was shopping at Defendants' commercial outlet store in Newark, Delaware. On that date, two employees attempting to move a boxed appliance from a shelf allegedly dropped the box on Decedent's head as he shopped in the store. (D.I. 53, Ex. C at 17; Ex. D at 22) Decedent claimed to have walked around the store for a while longer "in a fog," and he called Plaintiff, who said Decedent was "talking in circles" and "did not sound like himself." (*Id.*, Ex. E at

---

[1] The briefing associated with the pending motion for summary judgment is found at D.I. 52, D.I. 53, and D.I. 54.

50:22-51:7) Decedent eventually purchased a stove and a range hood about an hour after the accident. (*Id.*, Ex. C at 17)

Decedent went to the emergency room at Christiana Care about forty minutes after checking out at Defendants' store. (*Id.*, Ex. G at 1) At the emergency room, Decedent was diagnosed with a cervical strain, concussion, and blunt head trauma. (*Id.*, Ex. G at 2) Decedent was instructed to follow up with other medical professionals. (*Id.*, Ex. G at 6) Plaintiff drove Decedent home from the hospital because he was not able to drive himself. (*Id.*, Ex. E at 66:2-17)

The following day, Plaintiff's counsel called David Wells, the manager of Defendants' store, to request the preservation of any security camera footage from the day of the incident. (D.I. 53, Exs. H-I) Counsel subsequently repeated the request via email and a letter. (*Id.*) Wells contacted Defendants' loss prevention department and general liability insurance company to report the claim, but he did not speak with his employees who interacted with Decedent on the date of the accident and did not otherwise investigate the accident. (*Id.*, Ex. J at 62-67) He also failed to preserve video footage from the store on the date in question. (*Id.*, Ex. J at 68-71) The employees who allegedly dropped the box on Decedent were never identified.

The oven and the range hood Decedent bought on June 26 were subsequently delivered to Decedent's house. (*Id.*, Ex. C at ¶ 2-4) Decedent did not remember purchasing the range hood, and Plaintiff and Decedent returned the range hood to Defendants' store. (*Id.*)

From the date of the alleged accident until his death on August 31, 2022,[2] Plaintiff experienced headaches, muscle spasms, pain in his neck and back, and memory loss. (*Id.*, Ex. C

---

[2] The parties do not dispute that Decedent's death is unrelated to the accident alleged to have occurred on June 26, 2019. The record confirms that Decedent was diagnosed with stomach cancer in September 2019 and succumbed to the illness on August 31, 2022. (D.I. 53, Ex. E at 20:4-5, 21:2-11; D.I. 31)

3

at ¶ 6) He could not remember details from the accident. (*Id.*, Ex. E at 51:18-22) Decedent also underwent treatment for back, spine, and traumatic brain injuries, as well as rehabilitation and speech/hearing therapy while simultaneously undergoing chemotherapy treatments for his stomach cancer. (*Id.*, Exs. S-T)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support the assertion by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## III. DISCUSSION

As a preliminary matter, the parties agree that Delaware law applies because Decedent's injury occurred in Delaware. (D.I. 52 at 6-7; D.I. 53 at 9 n.55); *see Erwin v. Ford Motor Co.*, 309 F. Supp. 3d 229, 233 (D. Del. 2018) (explaining that the law of the place where the injury occurred generally applies in wrongful death and personal injury cases). To prevail on a negligence claim under Delaware law, a plaintiff must "prove by a preponderance of the evidence that the defendant's actions breached a duty of care in a way that proximately caused the plaintiff's injury." *Russell v. K-Mart Corp.*, 761 A.2d 1, 5 (Del. 2000).

### A. Summary Judgment

Defendants argue that summary judgment in their favor is warranted because the only evidence supporting Plaintiff's position that Defendants breached a duty of care owed to Decedent is inadmissible hearsay. (D.I. 52 at 7-8) In particular, Defendants challenge the admissibility of Decedent's answers to interrogatories and the statements in Decedent's medical records. (*Id.*) Plaintiff responds that Decedent's interrogatory responses and medical records are admissible, and they demonstrate that Defendants breached a duty of care in a way that proximately caused Decedent's injury. (D.I. 53 at 9-13)

#### 1. Interrogatory responses

The court may consider Decedent's interrogatory responses in ruling on the pending

5

motion for summary judgment. Rule 56(c)(1) permits a party asserting that a fact cannot be or is genuinely disputed to support that position by citing to evidence including, *inter alia*, interrogatory answers. Fed. R. Civ. P. 56(c)(1)(A). Decedent's interrogatory responses establish the existence of a genuine issue of material fact regarding Defendants' alleged breach of a duty of care in a manner that proximately caused Decedent's injury. (D.I. 53, Ex. C) Specifically, the interrogatory responses state that two store employees came into the aisle where Decedent was standing and attempted to retrieve a large box from a shelving unit against the wall behind Decedent, resulting in the box being dropped on Decedent's head. (*Id.*, Ex. C at 1) This evidence supports Plaintiff's claim that Defendants breached a duty of care which proximately caused Decedent's injury.

Defendants argue that Decedent's interrogatory responses are nonetheless inadmissible at trial under Federal Rule of Evidence 807, and summary judgment in Defendants' favor is warranted because the discovery responses cannot be considered at trial. (D.I. 54 at 2) ("Plaintiff ignores Third Circuit precedent while misguidedly arguing that decedent's Answers to Interrogatories enable Plaintiff to avoid the entry of summary judgment."). According to Defendants, summary judgment should be granted because Plaintiff has no admissible evidence regarding a disputed issue of material fact. (*Id.* at 1-3)

Plaintiff has shown that Decedent's interrogatory responses are admissible under the residual hearsay exception in Federal Rule of Evidence 807. "The rule governing consideration of hearsay statements in opposition to summary judgment is that 'hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial.'" *Morgan-Hicks v. N.J. Dep't of Corr.*, 2020 WL 1983705, at *5 (D.N.J. Apr. 24, 2020) (quoting *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000)). The residual

6

exception to the admissibility of hearsay under Fed. R. Evid. 807 provides, in relevant part, that "a hearsay statement is not excluded by the rule against hearsay" if:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement; and
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a). The residual hearsay exception is meant to be used only in "exceptional circumstances." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 112 (3d Cir. 2001). Generally, answers to interrogatories by an unavailable party are not considered trustworthy because the party is motivated to describe the facts in the light most favorable to himself without being subjected to cross-examination. *Morgan-Hicks*, 2020 WL 1983705, at *6 (citing *Kirk v. Raymark Indus. Inc.*, 61 F.3d 147, 167 (3d Cir. 1995)).

Here, both prongs of the residual exception test under Fed. R. Evid. 807 support consideration of Decedent's interrogatory responses in opposition to Defendants' motion for summary judgment. Under the first prong, Decedent's interrogatory responses are supported by sufficient guarantees of trustworthiness and corroborating evidence. The verified responses were made under penalty of perjury approximately three months before Decedent's scheduled deposition. (D.I. 53, Ex. C) There is no evidence to suggest that Decedent believed his interrogatory responses would not be subject to cross examination during his deposition or at trial when he verified those responses. Moreover, Decedent's telephone conversation with Plaintiff at the store following the incident and evidence of his arrival at the emergency room shortly after leaving the store corroborate the verified interrogatory responses.

Under the second prong, Decedent's interrogatory responses are more probative on the point for which they are offered than other evidence Plaintiff could obtain through reasonable

efforts. As discussed in more detail at § III.B, *infra*, video surveillance evidence was not preserved by Defendants despite the prompt efforts of Plaintiff's counsel to preserve that evidence. Moreover, Wells could not recall making an internal investigation to determine which employees were directly involved in the alleged conduct. (D.I. 53, Ex. J at 66:23-67:18) These circumstances confirm that Defendants had multiple opportunities to present evidence supporting their own version of events or challenging Decedent's characterization of those events, but they failed to do so. Thus, Decedent's interrogatory responses are more probative than other evidence in the record.

Defendants argue that, under nearly identical circumstances, the Third Circuit in *Kirk v. Raymark Industries, Inc.* rejected the application of the residual hearsay exception to a party's interrogatory responses. (D.I. 54 at 2); *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 167 (3d Cir. 1995). In *Kirk*, however, the district court did not make any findings as to the reliability of the interrogatory responses. *Id.* at 167 n.27. *Cf. Bohler-Uddenholm*, 247 F.3d at 113 (upholding district court's findings that the affidavit was trustworthy where it was made under oath and penalty of perjury). The basis for the Third Circuit's rejection of the interrogatory responses in *Kirk* was the conclusion that the responding party "had every incentive to set forth the facts in a light most favorable to itself[.]" *Kirk*, 61 F.3d at 167. But the responding party in *Kirk* was a co-defendant trying to escape liability. Here, in contrast, Decedent had no "motive to exculpate [him]self" because no claims are asserted against him. *Id.* at 167-68.

Viewed in the light most favorable to Plaintiff as the nonmoving party, Decedent's interrogatory responses create a material issue of fact for the jury as to whether Defendants breached a duty of care to Decedent, proximately causing Decedent's alleged injuries. Consequently, Defendants' motion for summary judgment is DENIED.

## 2. Medical records

Defendants have waived any argument in their motion for summary judgment that Decedent's medical records are inadmissible hearsay because they failed to substantively argue the issue in their opening brief in support of the motion for summary judgment.[3] (D.I. 52) In fact, Defendants' opening brief suggests that the medical records likely are admissible, representing that "[t]he only arguably admissible evidence [Plaintiff] has comes from decedent's medical records where decedent merely states that a box fell on his head at a Sears' store." (*Id.* at 8) Defendants change their tune in the reply brief, dedicating an entire section to the argument that Decedent's statements in his medical records "contain[ ] three layers of hearsay[.]" (D.I. 54 at 3-5) "A reply brief, however, is not the appropriate time to raise a new argument." *Cohen v. Cohen*, C.A. No. 19-1219-MN, 2022 WL 952842, at *4 (D. Del. Mar. 30, 2022) (citing cases).

It is not necessary at this stage for the court to rule on the admissibility of Decedent's medical records at trial. Defendants may renew without prejudice their challenge to the admissibility of the medical records via a motion *in limine* at the pretrial conference.

## B. Spoliation

Plaintiff seeks an adverse inference that Defendants are not entitled to summary judgment on Plaintiff's negligence claim due to Defendants' alleged spoliation of evidence. (D.I. 53 at 13-19) In support of this argument, Plaintiff represents that Defendants failed to preserve video surveillance evidence from the store on the date of the incident, despite Plaintiff's counsel's prompt and repeated requests for preservation of the evidence. (*Id.*) Defendants challenge the

---

[3] Defendants' opening brief is less than nine pages long, well below the twenty-page limit set forth in the Local Rules. (D.I. 52) Furthermore, the docket confirms that Defendants affirmatively requested permission to file an early summary judgment motion. (D.I. 48) There is no indication that Defendants were unable to adequately present their arguments in their opening brief due to constraints placed upon them by the court.

scope of their duty to preserve, arguing that security cameras did not cover the area where the alleged incident occurred, and footage of the store's entrance and exit also failed to show the incident itself. (D.I. 54 at 5-6)

There are four requirements for spoliation: "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). All four requirements are met in this case. Deposition testimony and other evidence from Defendants' witnesses confirms that Defendants maintained video surveillance footage of the store, including footage of the cashier checkout aisles and store entrance and exit, but they did not produce any footage to Plaintiff. (D.I. 53, Ex. J at 70:1-71:24; Ex. N) It is undisputed that Defendants received a litigation hold request from Plaintiff notifying them of their duty to preserve, but they disregarded it based on their unilateral interpretation of the scope of the hold. (D.I. 53, Exs. H-I; Ex. B at Interrogatory No. 22; Ex. L at 82-83)

Defendants argue that the second element is not met because the video footage does not cover the area where the alleged incident occurred, and it is therefore not relevant to the claims or defenses in the case. (D.I. 54 at 5-6) But Defendants' unilateral assertions regarding relevance cannot be confirmed absent review of the footage. *See Ogin v. Ahmed*, 2008 WL 4722390, at *1 (M.D. Pa. Sept. 2, 2008) (finding circumstances warranted the sanction of an adverse inference instruction where the defendants destroyed evidence after unilaterally determining that the evidence was not relevant). Assuming that the video footage of these areas did not capture the aisle where the incident allegedly occurred, it may have nonetheless provided relevant circumstantial evidence regarding the amount of time Decedent spent at the store, what

10

he purchased, and his physical appearance and mannerisms when he entered and exited the store. Such circumstantial evidence is relevant and could have aided the factfinder in determining whether Decedent's conduct and appearance was consistent with the alleged incident and injuries claimed. *See, e.g., Defrehn v. TJX Cos., Inc.*, 2022 WL 2974717, at *3 (E.D. Pa. July 26, 2022) (finding that "the surveillance footage would have at least shown when Store employees removed the cleaning supplies from the supply closet, which is relevant to establishing whether Defendants had notice of the spill[.]").

Based on the foregoing, the court finds that spoliation has occurred. The inquiry next turns to the appropriate sanction. Plaintiff requests an adverse inference that Defendant is not entitled to summary judgment on Plaintiff's negligence claim.[4] (D.I. 53 at 19) The Third Circuit has held that "the trier of fact generally may receive the fact of the . . . nonproduction or destruction [of relevant evidence] as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). For purposes of Defendants' case dispositive motion, Plaintiff is entitled to the benefit of an adverse inference that the video footage was not preserved because it contained evidence unfavorable to Defendants. *Defrehn*, 2022 WL 2974717, at *3 (denying summary judgment based on adverse inference drawn from destroyed video footage). Adverse inferences drawn from the spoliated video footage raise disputed issues

---

[4] To the extent that Plaintiff wishes to extend the adverse inference to the jury instructions, the court will make a separate and independent determination on whether an adverse inference is warranted at trial. *See IOENGINE LLC v. Paypal Holdings, Inc.*, C.A. No. 18-452-WCB, 2022 WL 1443867, at *8 (D. Del. May 3, 2022) (reserving the right to order additional remedial measures, such as an adverse inference jury instruction, during the course of trial); *Helios Software, LLC v. SpectorSoft Corp.*, C.A. No. 12-81-LPS, 2015 WL 3561367, at *4 (D. Del. June 5, 2015) (hearing oral argument on motion for sanctions requesting adverse inference instruction during the pretrial conference); *Wagner v. Sea Esta Motel I*, C.A. No. 13-81-RGA, 2014 WL 4247731, at *1 (D. Del. Aug. 26, 2014) (granting adverse inference instruction at the motion *in limine* stage).

12

of fact regarding the incident and the injuries allegedly sustained by Decedent, providing an additional basis for the denial of Defendants' motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED. An Order consistent with this Memorandum Opinion shall issue.